Marshall, C. J.
 

 These two proceedings in error are prosecuted from an order of the Public Utilities Commission, both plaintiffs in error being protestants against the application heard and decided by the commission. The Huber Motor Transportation Company filed its application on October 24, 1927, for a
 
 nunc pro tunc
 
 order to correct an alleged
 
 *436
 
 clerical error theretofore made by ,the commission in the issuance of a certificate of convenience and necessity authorizing an irregular motor transportation route for transportation of freight.
 

 In September, 1923, Bertha M. Huber filed an affidavit setting forth that on or prior to April 28, 1923, she had operated a regular route for the transportation of freight between Green Springs, Ohio, and Cleveland, Ohio, and upon this affidavit certificate No. 345 was issued authorizing a regular freight transportation operation. On the same date Bertha M. Huber filed another affidavit setting forth that on and prior to April 28,1923, she had operated in good faith a regular route between Green Springs, Ohio, and Willard, Ohio, Tiffin, Ohio, Fostoria, Ohio, Findlay, Ohio, Prairie Depot, Ohio, Pemiberville, Ohio, Elmore, Ohio, Toledo, Ohio, Oak Harbor, Ohio, Port Clinton, Ohio. A map of eleven counties showing the points named and the highways connecting them was attached to the affidavit, and the affidavit was supported by affidavits of other parties stating that Mrs. Huber had been operating trucks for transportation of freight upon and over the highways, without definitely stating the points covered by such operation. No other testimony was introduced at that time and of course none was required. Acting thereon the commission issued certificate No. 1123, authorizing an irregular operation to and from Green Springs, in connection with the other points named. Without going into detail it is sufficient to state that the affidavit described 'an irregular route, and that it lacked many of the requirements to render it sufficient as an affidavit covering a regular route. Some time thereafter, on'
 
 *437
 
 application, the commission authorized a transfer of both certificates to the Huber Motor Transportation Company. The prayer of the application for the
 
 nunc pro tunc
 
 order was to have the irregular certificate corrected by making it a regular certificate. The application was protested by a number of transportation companies, including the plaintiffs in error in these error proceedings. Upon the hearing, evidence was taken, and the court granted the
 
 nunc pro tunc
 
 order. In granting the application the chairman of the 'commission among other things, said:
 

 “Inasmuch as this is a mere proceeding in which the party is attempting to have that done which the commission intended to do at that time, so that the records will disclose the facts, and inasmuch as the records themselves are either misplaced or lost, the commission will at this time authorize and grant a regular certificate for the reason that that is what was originally intended to be granted and issued under certificate No. 1123.”
 

 The foregoing expression indicates that the commission entertained the erroneous notion that an intention entertained by the commission in 1924, but which was not in fact carried into effect, and which so far as the evidence discloses did not result in making an order, can be executed four years later. If the record of the hearing upon this application for a
 
 nunc pro tunc
 
 order fairly established that the commission had in 1924 reached the conclusion that Mrs. Huber was entitled to a certificate authorizing a regular motor transportation operation, but that the certificate issued had in fact authorized an irregular motor transportation operation, through a
 
 *438
 
 clerical error, the commission would clearly be within its powers in making a correction. On the other hand, while the certificate issued in 1924 was not produced at the hearing, having been lost, it is not disputed that the certificate was in fact one which authorized an irregular transportation operation. The testimony taken at the hearing upon the application for the
 
 nunc pro tunc
 
 order not only fails to show that a regular transportation operation was authorized in 1924, but does show that a regular operation could not have been legally granted at that time upon the affidavit filed and the other affidavits in support thereof. It is significant that the two affidavits filed by Mrs. Huber in September, 1923, show a wide difference in the character of the transportation service being rendered between Green Springs, Ohio, and Cleveland, Ohio, on the one hand, and the other service to and from Green Springs, which was described in the affidavit resulting in the issuance of certificate No. 1123, on the other hand. These differences are further significant because there was no occasion to file two affidavits if a regular route was intended to be described in both instances and the affiant really desired a regular certificate in and out of Green Springs, with its attendant obligations.
 

 The conclusions reached by the commission in entering the
 
 nunc pro tunc
 
 order do violence to all the well-established principles governing
 
 nunc pro tunc
 
 orders. It is not the province of a
 
 nunc pro tunc
 
 order to correct a mistake in judgment, its sole function being that of correcting a clerical error in the execution of a ministerial act. Where an order has actually been rendered, but not entered on the record
 
 *439
 
 in consequence of mistake, neglect, omission, or inadvertence of the clerk or other ministerial officer, the court or other tribunal has power to order that the judgment or order -be entered
 
 nunc pro tunc.
 
 Even so, the fact of its rendition must be satisfactorily established, and it must further appear that no intervening rights will be prejudiced. The power to enter a
 
 nunc pro tunc
 
 order is inherent in courts of justice. This power is necessary in order that the records of a court or other tribunal may be made to speak the truth where a clerical error has intervened. The decisions declaring the power and regulating its exercise are numerous and involved in no difficulty or conflict. A multitude of cases could be cited from other jurisdictions, but they are in such harmony with the decisions of our own state that it is not necessary to go beyond the former decisions of this court to find the controlling principles. In some of the earlier cases it has been held that a
 
 nunc pro tunc
 
 order cannot be founded upon mere parol proof of what was ordered to be done at a previous term where there is no written minute to sustain it. The later cases have modified this rule, and it is now well established that where the court has an independent recollection of the order made, and where no minute has been made upon records ' of the court, the independent recollection of the court is quite sufficient to authorize the
 
 nunc pro tunc
 
 order. Such an application may also be supported by evidence of action taken by the court or other tribunal at a former period, whether the evidence in support consists of records or minutes of the court’s action at the time, or of oral testimony of witnesses having personal knowledge of such action taken by such court or tribunal.
 

 
 *440
 
 In
 
 Cleveland Leader Printing Co.
 
 v.
 
 Green,
 
 52 Ohio St., 487, 40 N. E., 201, 49 Am. St. Rep., 725, the syllabus states:
 

 “The province of a
 
 nunc pro tuno
 
 entry is to correct the record of the court in a cause so as to make it set forth an act of the court, which though actually done at a former term thereof, was not entered upon the journal; and it cannot lawfully be employed to amend the record so as to make it show that some act was done at a former term,
 
 which might or should have been,
 
 but was not, then performed.”
 

 In
 
 Huber Mfg. Co.
 
 v.
 
 Sweny,
 
 57 Ohio St., 169, 48 N. E., 879, Spear, J., states:,
 

 “By inadvertence, no entry of the order so made was entered on the journal. If the order were in fact made — and the court finds that it was — it then became the duty of the clerk to make a proper entry of it on the journal. * *
 
 *
 
 The remedy for such inadvertence is an order
 
 nunc pro tunc,
 
 for the proper office of a
 
 nunc pro tunc
 
 order is to correct the record so as to cause it to show an .act of the court which, though actually done at a former term, was riot entered on the journal.”
 

 Applying the foregoing principles to the instant case it is plain that the commission acted upon evidence introduced to show what action the commission should have taken in 1924, rather than to show what action was in fact taken by the commission at that time. Much of the evidence introduced is outside of any orders or entries either made or recorded by the commission in 1924.
 

 The
 
 nunc pro tunc
 
 order in this case was made after the hearing on December 13,1927, but was en
 
 *441
 
 tered as of February 5, 1924. Having taken considerable testimony at tbe bearing on December 13, 1927, and that testimony not being confined to matters purporting to show tbe judgment determined upon by tbe commission on February 5, 1924, but, on tbe other hand, having dealt with new facts and circumstances seeking to show tbe manner of operation of tbe utility before and after April 28,1923, it is plain from an examination of tbe record made on December 13, 1927, that tbe evidence goes far beyond tbe allegations of tbe original affidavit.
 

 Tbe maps, schedules, affidavits, and- other data which made up tbe record supporting tbe original order show that an irregular operation was desired and an irregular operation granted. Tbe
 
 nunc pro tunc
 
 order grants a regular operation, which is in contradiction of tbe record made in support of tbe original application.
 

 It is not necessary to consider tbe numerous questions argued by tbe protestants other than tbe principles governing
 
 nunc pro tunc
 
 entries. It is sufficient to say that the order of tbe commission is a new order based upon additional evidence, and an amendment of its original final order, and tbe order of tbe commission must therefore be reversed.
 

 Order reversed.
 

 Allen, Kinkade, Bobinson, Jones and Matthias, JJ., concur.